UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARK S. WICKLUND, an individual,<br><br>               Plaintiff,<br><br>v.<br><br>IDAHO DEPARTMENT OF CORRECTIONS, a department of the State of Idaho, IDAHO COMMISSION OF PARDON AND PAROLE, a commission of the State of Idaho, STATE OF IDAHO, SANE SOLUTIONS, TERRY REILLY HEALTH SERVICES, KEN BENNETT, an individual, MOIRA LYNCH, an individual, WILLIAM C. YOUNG, an individual, BRANDON SUTHERLAND, an individual, ELISSA MEZO, an individual, MARK McCULLOUGH, an individual, HEIDI HART, an individual,<br><br>               Defendants. | Case No. 1:09-cv-00674-EJL-CWD<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Before the Court is the Motion for Summary Judgment (Dkt. 34) filed by

Defendants Idaho Department of Correction ("IDOC"); the Idaho Commission of Pardon

and Parole ("ICPP"); the State of Idaho; and state employees Ken Bennett, Director of Probation and Parole; Moira Lynch, supervisor of Probation and Parole; William C. Young, Commissioner for Idaho Commission for Pardon and Parole; and Brandon Sutherland, a probation officer (collectively, the "State Defendants"). The State Defendants seek judgment as a matter of law on all of the claims presented by Plaintiff in his Complaint.[1]

The parties have fully briefed the motion and it is ripe for the Court's consideration. Having reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be aided significantly by oral argument, the motion will be decided on the record before this Court without oral argument. Dist. Idaho L. Rule 7.1(d).

## FACTS

On May 8, 2001, Plaintiff Wicklund was charged by information with a felony and he later entered a plea of guilty on August 27, 2001, to the charge of sexual battery of a minor child age 16/17 years of age. (Aff. of Bennett Ex. 1, Dkt. 34-6.) Idaho State District Judge Thomas Neville entered a judgment of conviction, an order suspending execution of the judgment, and an order of probation on November 15, 2001. (*Id.*) The state court sentenced Wicklund to incarceration for a term of seven years, with two years fixed and five years indeterminate, which sentence was suspended and a seven year probationary period imposed instead. (*Id.*) As a condition of probation, Wicklund was

---

[1] Defendants Terry Reilly Health Services, SANE Solutions, and Terry Reilly employees Melissa Mezo, Mark McCullough, and Heidi Hart were dismissed from this matter on June 27, 2011. (Dkt. 38.)

required to successfully complete a SANE Solutions structured sex offender treatment program. (*Id.*)

In January of 2008, Wicklund was charged with a probation violation, and found to have violated the terms of his probation. (Aff. Of Bennett Ex. 3, 4 Dkt. 34-8, 34-9.) As a result, Wicklund's term of probation was extended through November 13, 2011, and he was required to continue with his treatment at SANE Solutions as a continued condition of his probation. (*Id.* Ex. 5, Dkt. 34-10.) Wicklund has lodged several claims against the Ada County Prosecuting Attorney's office and polygrapher James Page surrounding the litigation of his probation violation, and voiced his concerns about his allegations of misconduct during his SANE Solutions therapy sessions. (Aff. of Artiach Ex. 1, Dkt. 34-4); *see also Wicklund v. Page*, Case No. 1:09-cv-00671-EJL-CWD; *Wicklund v. Ada County*, 1:09-cv-00673-CWD; *Wicklund v. State of Idaho*, 1:10-cv-00057-EJL-CWD; and *Wicklund v. Hunstman*, 1:10-cv-00341-WBS, all of which were filed in this Court.

Wicklund's complaint in this case relates to a meeting that occurred among him and the individually named State Defendants which, according to the Complaint, occurred on or about February of 2009. Defendant Melissa Mezo, an employee of Terry Reilly Heath Services and a participant of the SANE Solutions program, produced business records indicating the meeting occurred on January 26, 2009, which fact was not disputed by Wicklund. (Aff. of Mezo ¶ 9, Dkt. 34-3.) Wicklund has affirmed the meeting occurred in January of 2009. (Aff. of Wicklund ¶ 1, Dkt. 35-1.)

According to the State Defendants, SANE Solutions notified the Probation and Parole Department that Wicklund was disrupting therapy sessions with his criticisms of

the prosecutor's office, polygrapher James Page, and the judicial system. (*Id*. ¶¶ 7—8.) A meeting was scheduled, which took place at the Fourth District probation office. (Compl. ¶18 Dtk. 1; Aff. of Bennett ¶5, Dkt. 34-5.) During the meeting, the individuals present allegedly addressed Wicklund's disruptive behavior, and thereafter he did not repeat the disruptive behavior during SANE Solutions therapy sessions. (Aff. of Mezo ¶¶ 9—10.) Wicklund was told to refrain from commenting about his grievances and to participate in group therapy, and informed that failure to satisfactorily complete the program would constitute a probation violation. (Aff. of Bennett ¶ 7, Ex. 6, Dkt. 34-5.) As of May 11, 2011, Wicklund was continuing with his probation and had not been cited for any probation violations after the January 25, 2009 meeting. (*Id.* ¶ 8.)

Wicklund, however, paints a different picture of the meeting, which he claims was "secretive, coercive and threatening." (Compl. ¶17, Dkt. 1.) Wicklund contends that the State Defendants "demanded" he stop his investigation regarding Page, and he was "ordered" not to take legal action against the Ada County Prosecutor's Office or the polygrapher, James Page, otherwise he "would go to jail that day." (Compl. ¶¶ 19—20.) Wicklund also avers he was informed that, if a lawsuit was filed in the future, he "would be jailed pursuant to discretionary time," and was told to "stand down." (Compl. ¶¶ 21—23.)

Wicklund filed a Notice of Tort Claim with the Idaho Secretary of State on August 19, 2009, containing details about the meeting described in his Complaint, although the Notice alleged that the meeting occurred in 2008. (Aff. of Artiach ¶1, Ex. 1, Dkt. 34-4.)

Wicklund filed a three count complaint with the Court on December 22, 2009, against the named Defendants for violation of his constitutional rights under the First, Fifth, and Fourteenth Amendment under 42 U.S.C. § 1983, as well as for negligence and intentional infliction of emotional distress. Wicklund contends that the State Defendants' threats violated his First Amendment right to free speech, because the State Defendants threatened to incarcerate him if he spoke of his investigations and the alleged improper conduct he was investigating. Wicklund seeks "nominal and actual damages" for the constitutional violation.

In addition, Wicklund alleges the State Defendants were negligent because they breached their duty of care by "calling the meeting, intimidating the Plaintiff, threatening to jail [Plaintiff], and depriving him of his liberty when they knew or should have known their conduct was unreasonable." The third count alleges intentional infliction of emotional distress, claiming that the State Defendants' threats and conduct were intentional and that Wicklund suffered "extreme emotional distress" as a result of the State Defendants' conduct. Wicklund seeks damages under the state law claims.

## ANALYSIS

### 1.    Standards for Motions for Summary Judgment

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317,

323-24 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those which may affect the outcome of the case. *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *Anderson*, 477 U.S. at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324 (citation and internal quotation marks omitted).

**2.     The Constitutional Claims Under Section 1983**

**A.     *The State Defendants Are Not "Persons" Under Section 1983***

Wicklund asserts his First Amendment and other constitutional claims under 42 U.S.C. § 1983, the civil rights statute. To assert a claim under Section 1983, a plaintiff must show the existence of four elements: "(1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Section 1983 is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Wicklund has sued the State Defendants under Section 1983 for money damages. The State of Idaho, the IDOC, and the ICPP are not proper defendants in a Section 1983 action. The IDOC and the ICPP are executive departments of state government. *See* Idaho Code § 20-201. Section 1983 does not provide a federal forum for litigants who seek damages against a state or state agencies. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70 (1989). Therefore, Wicklund's constitutional claims against the State of Idaho, the IDOC and ICPP are not cognizable under Section 1983.

As for the individually named State Defendants, state actors sued in their official capacity for damages are also not persons for purposes of Section 1983. *See Arizonans*

*for Official English v. Arizona*, 520 U.S. 43, 69 n. 24, (1997); *Will*, 491 U.S. at 71. Even if State Defendants Moira Lynch, William C. Young, and Brandon Sutherland were sued in their official capacity for injunctive relief, official-capacity suits filed against state officials are merely an alternative way of pleading an action against the entity of which the defendant is an officer. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The Court would, nevertheless, have jurisdiction to hear Section 1983 claims against the individual Defendants in their official capacities for prospective injunctive relief. *Cerrato v. San Francisco Community College Dist.*, 26 F.3d 968, 973 n.16 (9th Cir. 1994). However, Wicklund has not asserted any claim for prospective injunctive relief.

Therefore, there are no genuine issues of disputed material facts regarding Wicklund's constitutional claims asserted against the State Defendants. These claims are not cognizable under Section 1983, and judgment as a matter of law should be granted to the State Defendants.

### B. *The Eleventh Amendment Bars Wicklund's Claims Against the State Defendants*

The United States Supreme Court has determined that the Eleventh Amendment generally prohibits litigants from bring suits against states, state agencies, and state officials acting in their official capacity. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993). The Eleventh Amendment prohibits a federal court from entertaining a suit brought by a citizen against a state. *Hans v. Louisiana*, 134 U.S. 1 (1890).

Wicklund urges this Court to reverse the well-established principle barring suits by citizens against a state and its officials acting in their official capacities. However, the United States Supreme Court has consistently applied the Eleventh Amendment's jurisdictional bar to states, state entities, and state actors acting in their official capacities "regardless of the nature of the relief sought." *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The jurisdictional bar applies to suits brought in federal courts by citizens of another state, as well as to suits brought by a state's own citizens. *Puerto Rico Aqueduct & Sewer Auth.* 506 U.S. at 144.

Wicklund has offered no reason to overrule the above authorities other than his opinion that they are wrong. Therefore, the State Defendants are entitled to judgment as a matter of law, because the constitutional claims against them for damages are barred by the Eleventh Amendment.

## C.     *Qualified Immunity Standards*

When a plaintiff is seeking damages against a state official, the Court generally construes the complaint as an individual capacity suit because an official capacity suit for damages would be barred.  *See Cerrato v. San Francisco Community College Dist*., 26 F.3d 968, 973 n.16 (9th Cir. 1994). The Eleventh Amendment prohibition against monetary damages imposed upon a state and its officials acting in their official capacity does not apply to personal capacity suits seeking to impose personal liability upon government officials for actions taken under color of state law. *Id*. (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  Although the Complaint does not expressly state that Wicklund is suing the individual State Defendants in their individual capacities, the

basis of the claims asserted and the nature of the relief sought—monetary damages—can reasonably be construed as asserting claims against the individual State Defendants in their individual capacities. *See Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1990) (construing a complaint to assert claims against state officials in their individual capacities based upon the claims asserted and the nature of the relief sought).

In Section 1983 actions, the doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate an inmate's clearly-established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Conversely, a state official may be held personally liable in a Section 1983 action if he knew or should have known that he was violating a plaintiff's clearly-established federal rights. *Id*. True to its dual purposes of protecting state actors who act in good faith and redressing clear wrongs caused by state actors, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

The Court generally applies a two pronged test to resolve qualified immunity claims. First, the Court considers whether, "[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the [defendants'] conduct violated a constitutional right," and second, whether that right was clearly established. *Saucier v. Katz*, 533 U.S. at 201 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). The Court must consider the materials submitted in support of, and in opposition to, summary judgment, and view all facts in favor of the party opposing summary judgment. *Squaw Valley*

*Development Co v. Goldberg*, 375 F.3d 936, 942 (9th Cir. 2004), *rev'd on other grounds* (citing *Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001)). If no constitutional violation is found, the inquiry ends at step one. *Id.* (citing *Cunningham v. City of Wenatchee*, 345 F.2d 802, 810 (9th Cir. 2003)). If the parties' submissions create a triable issue of material fact as to whether a constitutional violation has occurred, the Court proceeds to step two. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

To determine whether a right was clearly established, a court turns to Supreme Court and Ninth Circuit law existing at the time of the alleged act. *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996) (citation omitted). In the absence of binding precedent, the district courts should look to available decisions of other circuits and district courts to ascertain whether the law is clearly established. *Id*. (citation omitted).

The inquiry of whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. at 201. For the law to be clearly established, "[t]he contours of the right" must be sufficiently clear that a reasonable official would understand that his conduct violates that right. *Anderson v. Creighton,* 483 U.S. 635 (1987). It is not necessary that the "very action in question has previously been held unlawful, . . . but it is to say that in the light of preexisting law the unlawfulness must be apparent" to the official. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is

whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. at 194-95 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

Application of qualified immunity is appropriate where "the law did not put the [defendant] on notice that his conduct would be clearly unlawful. *Id.*, 533 U.S. at 195. However, if there is a genuine dispute as to the "facts and circumstances within an officer's knowledge," or "what the officer and claimant did or failed to do," summary judgment is inappropriate. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993). When a Section 1983 defendant makes a properly supported motion for summary judgment based on immunity, the plaintiff has the obligation to produce evidence of his own; the district court cannot simply assume the truth of the challenged factual allegations in the complaint. *Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).

### (1)    *Defendant William C. Young*

Wicklund names Defendant William C. Young, Commissioner for the Idaho Commission for Pardon and Parole, in Count One alleging violation of his free speech rights. Wicklund contends an individual by the name of "Bill Young" was present at the meeting that is described in the Complaint. However, the State Defendants, by affidavit, established that Commissioner Young was not at the meeting, but rather an individual named "Bill Young" was present, and he worked as a drug and alcohol rehabilitation specialist. (Aff. of Bennett ¶5, Dkt. 34-5.) Wicklund has not come forward with any facts other than the facts in the Complaint to dispute the State Defendants' assertion that

Commissioner Young was not present at the meeting. Wicklund may not rely upon the pleadings to create a disputed issue of material fact. *Celotex*, 477 U.S. at 324.

Therefore, it is undisputed that Commissioner Young did not participate in the meeting during which Wicklund contends his constitutional rights were violated. Under Section 1983, however, a plaintiff must show that each individual personally participated in the alleged constitutional tort. *Johnson v. Duffy*, 588 F.2d 740 (9th Cir. 1978). Absent a showing of personal participation by Commissioner Young, summary judgment should be granted in his favor on Wicklund's free speech violation claim.

(2) ***There Is a Disputed Issue of Material Fact Concerning the Remaining Individually Named State Defendants and Qualified Immunity***

Although prisoners' and probationers' rights may be limited, of "fundamental import" are their first amendment rights to pursue civil rights litigation in the courts. *Rhodes*, 408 F.3d at 457. The prohibition against retaliatory punishment for exercise of a prisoner's first amendment rights is, contrary to the State Defendants' arguments, clearly established law in the Ninth Circuit for qualified immunity purposes. *Rhodes*, 408 F.3d at 567 (citing *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995)).

Within the prison context, a viable claim of First Amendment retaliation entails five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559,

567—68 (9th Cir. 2005).[2] A plaintiff must allege either a "chilling effect," or that he suffered some other harm. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing *Rhodes*, 408 F.3d at 568 n.11). [Plaintiff] must ultimately prove that [Defendants'] desire to cause the chilling effect was a but-for cause of [Defendants'] action. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir. 2008).

Wicklund alleges that, during the meeting described in his Complaint, the State Defendants violated his First Amendment right to free speech by threatening to jail him if he continued to speak about his investigation, concerns, or suspicions related to improper conduct by Defendants, the Ada County Prosecuting Attorney's Office, and polygrapher James Page. Wicklund further alleges that State Defendants Moira Lynch, Bill Young, Ken Bennett, Mark McCullough, Melissa Mezo and Brandon Sutherland were present during the meeting.

In his affidavit, Wicklund states that, during the meeting, Defendant Bennett, the Director of Probation and Parole, held up a "handful of papers" constituting the letters Wicklund had sent to the probation department, governor's office, and attorney general's office complaining about polygrapher James Page, SANE Solutions, and the IDOC. Allegedly, Defendant Bennett told Wicklund that if he did "not 'stand down' with regards to the matter and [Wicklund's] complaint involving him," Defendant Bennett would jail Wicklund. Bennett also allegedly told Wicklund that, "depending on how I handled things, he would determine whether to put me in jail and asked me what I had to say for

[2] Although Wicklund was not incarcerated, the parties have not pointed the Court to any other authority indicating the elements of a First Amendment claim are substantially different for persons subject to probationary restrictions. Wicklund relied upon *Rhodes* in his memorandum. (Mem. at 7 Dkt. 35.)

myself." Bennett allegedly asked Wicklund what he had to say for himself regarding this "bull*** and lawsuits and all your investigations." Defendant Lynch allegedly stated to Wicklund that his life would be "a lot simpler if [he] would get away from all this 'nonsense.'"

Wicklund believed that the meeting that is the subject of his Complaint "was a clear attempt to force me to drop my complaints and potential lawsuits that [he] was investigating," and was "about more than my commenting during group sessions," because the State Defendants made it clear that he "would be jailed if [he] pursued the matter any further." The Complaint alleges that the State Defendants violated Wicklund's first Amendment right to free speech by threatening to jail him if he spoke about his investigations, concerns, or suspicions related to improper conduct by the State Defendants. Wicklund further alleges that the threats were "intimidating."

Contrary to Wicklund's version of events, the State Defendants contend that, during this meeting, Wicklund was simply asked to cease disruption of his SANE Solutions group treatment sessions and to stay on topic during the sessions. The State Defendants assert that their comments were limited solely to Wicklund's therapy sessions, and did not extend beyond the confines of SANE Solutions' group sessions. The State Defendants restricted Wicklund's speech, they contend, because he would be in violation of the terms of his probation for failure to complete the court ordered sessions if he was removed from participating in the sessions due to his disruptive behavior. The State Defendants argue that they had a legitimate correctional goal in preventing Wicklund from disrupting the therapy sessions.

Viewing the facts in a light most favorable to Wicklund as the non-moving party, the above facts present a triable issue of material fact. The Court may not engage in a credibility determination between Wicklund's version of events, which describes threats that go beyond the confines of Wicklund's SANE Solutions therapy sessions, and the State Defendants' version of events, which is confined to prohibiting Wicklund from engaging in irrelevant discussions about his complaints during group therapy sessions. Although Wicklund does not dispute the State Defendants' claims that his disruptive behavior during therapy sessions was a topic of concern, Wicklund claims that the threats encompassed his continuing investigation and pursuit of his claims against Page and others, in an effort to intimidate him, suggesting that the exercise of his First Amendment rights were chilled beyond simply addressing his behavior during group therapy sessions. Thus, if Wicklund's version of events is accepted, the threats of jail in retaliation for Wicklund's speech outside of his therapy sessions encompass a far broader reach. Accordingly, the Court recommends that summary judgment be denied to the individual State Defendants on Wicklund's First Amendment claim.

### 3. The State Law Claims Are Barred for Failure To File A Timely Notice of Tort Claim[3]

The State Defendants argue that Wicklund's negligence and intentional infliction of emotional distress claims are precluded for failure to file a timely notice of claim as required by the Idaho Tort Claims Act ("ITCA"). *See* Idaho Code § 6-906. Claims subject

---

[3] The Court has discretion whether to exercise supplemental jurisdiction over the remaining state law claims for negligence and intentional infliction of emotional distress. 28 U.S.C. § 1367. Given the reasons for finding Defendants entitled to summary judgment, and in an effort to prevent further litigation, the Court will exercise jurisdiction over the remaining state law claims.

to the ITCA include "any written demand to recover money damages from a governmental entity or its employee which any person is legally entitled to recover under this act as compensation for the negligent or otherwise wrongful act or omission of a governmental entity or its employee when acting within the course or scope of his employment." Idaho Code § 6-902(7). In addition, "a governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which arises out of any act or omission of an employee of the governmental entity exercising ordinary care." Idaho Code § 6-904(1). A person bringing such a claim against a political subdivision of the state or against any employee thereof is required to file a notice of claim with the clerk or secretary of the political subdivision within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered. Idaho Code § 6-906.

Wicklund does not controvert the State Defendants' statement of fact that he did not timely provide a notice of claim to the State of Idaho. Although Wicklund asserted in the Complaint that the meeting occurred in February of 2009, Wicklund has not brought forth any evidence disputing the State Defendants' statement that the meeting among Wicklund and the State Defendants occurred on January 26, 2009, which therefore constitutes the date the claim arose.[4] The Notice of Tort Claim was not filed until August 19, 2009, more than 180 days from the date the claim arose.[5]

---

[4] Wicklund may not rely upon the pleadings and must show by "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324. In the absence of any fact disputing that the meeting occurred on January 26, 2009, no genuine dispute of material fact exits.

[5] 180 days fell on Friday, July 24, 2009.

There is no genuine issue of disputed material fact as to whether Wicklund filed a timely notice of claim. Summary judgment is properly granted to the State Defendants with respect to Counts two and three of the Complaint.[6]

## CONCLUSION

Based upon the foregoing analysis, the Court recommends that summary judgment be granted in favor of the State Defendants on all claims except for the First Amendment claim under Section 1983, brought against the individually named State Defendants, with the exception of Defendant William C. Young. Wicklund has not established any disputed issue of material fact with respect to the absence of Defendant William C. Young's participation in the meeting. Therefore, summary judgment should be granted in favor of Defendant William C. Young on all of the claims asserted in Wicklund's Complaint. Wicklund may proceed with his damage claims asserted under the First Amendment against State Defendants Ken Bennett, Moira Lynch, and Brandon Sutherland in their individual capacities, as there are disputed issues of material fact precluding summary judgment on those claims.

---

[6] Defendants assert also that Wicklund has not established that the State Defendants owed a duty, breached any duty, or caused physical harm, extreme or otherwise, to support his negligence claim and his intentional infliction of emotional distress claim. The Court notes that Wicklund did not offer any facts or legal argument to refute the State Defendants' arguments concerning those issues. However, because the Court finds that alternative grounds exist for its recommendation that summary judgment should be granted with respect to the two state law claims, it declines to address those issues.

# RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1)  Defendants' Motion for Summary Judgment (Dkt. 34) be **GRANTED IN PART AND DENIED IN PART** consistent with the Court's recommendation herein.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 626(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **November 22, 2011**

Honorable Candy W. Dale
United States Magistrate Judge