UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARK STEPHEN WICKLUND,<br><br>    Plaintiff,<br><br>    v.<br><br>IDAHO DEPARTMENT OF CORRECTIONS, a department of the State of Idaho, IDAHO COMMISSION OF PARDON AND PAROLE, a commission of the State of Idaho, STATE OF IDAHO SANE SOLUTIONS, TERRY REILLY HEALTH SERVICES, KEN BENNETT, an individual, MOIRA LYNCH, an individual, WILLIAMS C. YOUNG, an individual, BRANDON SUTHERLAND, an individual, ELISSA MEZO, an individual, MARK MCCULLOUGH, an individual, HEIDI HART, an individual,<br><br>    Defendants. | Case No. 1:09-CV-00674-EJL-CWD<br><br>**ORDER ON REPORT AND RECOMMENDATION** |

On November 22, 2011, Chief United States Magistrate Candy W. Dale issued a

Report and Recommendation (Dkt. 40) in this matter.  Pursuant to 28 U.S.C. § 636(b)(1),

the parties had fourteen days in which to file written objections to the Report and

ORDER ON REPORT AND RECOMMENDATION - 1

Recommendation.  Objections were filed by Defendants.  No objection nor a response to Defendants' objections were filed by Plaintiff. The matter is now ripe for the Court's review of the objections.

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." Moreover, this Court "shall make a de novo determination of those portions of the report which objection is made."  *Id.*  In *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003), the court interpreted the requirements of 28 U.S.C. 636(b)(1)(C):

> The statute [28 U.S.C. § 636(b)(1)(C)] makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise. As the *Peretz* Court instructed, "to the extent de novo review is required to satisfy Article III concerns, it need not be exercised unless requested by the parties." *Peretz*, 501 U.S. at 939 (internal citation omitted). Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct. *See Ciapponi*, 77 F.3d at 1251 ("Absent an objection or request for review by the defendant, the district court was not required to engage in any more formal review of the plea proceeding."); see also Peretz, 501 U.S. at 937-39 (clarifying that de novo review not required for Article III purposes unless requested by the parties) . . . .

*See also Wang v. Masaitis*, 416 F.3d 993, 1000 & n.13 (9th Cir. 2005).

Before the Court is the Motion for Summary Judgment (Dkt. 34) filed by Defendants Idaho Department of Correction ("IDOC"); the Idaho Commission of Pardon and Parole ("ICPP"); the State of Idaho; and state employees Ken Bennett, Director of Probation and Parole; Moira Lynch, supervisor of Probation and Parole; William C. Young, Commissioner for Idaho Commission for Pardon and Parole; and Brandon

Sutherland, a probation officer (collectively, the "State Defendants"). The State Defendants seek judgment as a matter of law on all of the claims presented by Plaintiff in his Complaint.

In the Report and Recommendation, Judge Dale recommends that summary judgment be granted in favor of State Defendants on all claims except for the First Amendment claim under § 1983, brought against the individually named State Defendants, with the exception of Defendant William C. Young (who should be dismissed from the lawsuit). Stated another way, Judge Dale recommends Plaintiff may proceed with his damage claims asserted under the First Amendment against State Defendants Ken Bennett ("Bennett"), Moria Lynch ("Lynch") and Brandon Sutherland ("Sutherland") in their individual capacities.

State Defendants object to the failure of Judge Dale to recommend Wicklund's § 1983 First Amendment claims also be dismissed against the State Defendants Bennett, Lynch and Sutherland. The State Defendants base this objection on several different arguments. Each of which will be addressed by this Court.

## FACTUAL BACKGROUND

While acknowledging that State Defendants' objections include some objections to Judge Dale's inclusion of certain facts, the Court incorporates Judge Dale's factual background from pages 2-5 of the Report and Recommendation, Dkt. 40, as a basis for evaluating the objections:

On May 8, 2001, Plaintiff Wicklund was charged by

ORDER ON REPORT AND RECOMMENDATION - 3

information with a felony and he later entered a plea of guilty on August 27, 2001, to the charge of sexual battery of a minor child age 16/17 years of age. (Aff. of Bennett Ex. 1, Dkt. 34-6.) Idaho State District Judge Thomas Neville entered a judgment of conviction, an order suspending execution of the judgment, and an order of probation on November 15, 2001. (*Id.*) The state court sentenced Wicklund to incarceration for a term of seven years, with two years fixed and five years indeterminate, which sentence was suspended and a seven year probationary period imposed instead. (*Id.*) As a condition of probation, Wicklund was required to successfully complete a SANE Solutions structured sex offender treatment program. (*Id.*) In January of 2008, Wicklund was charged with a probation violation, and found to have violated the terms of his probation. (Aff. of Bennett Ex. 3, 4 Dkt. 34-8, 34-9.) As a result, Wicklund's term of probation was extended through November 13, 2011, and he was required to continue with his treatment at SANE Solutions as a continued condition of his probation. (*Id.* Ex. 5, Dkt. 34-10.) Wicklund has lodged several claims against the Ada County Prosecuting Attorney's office and polygrapher James Page surrounding the litigation of his probation violation, and voiced his concerns about his allegations of misconduct during his SANE Solutions therapy sessions. (Aff. of Artiach Ex. 1, Dkt. 34-4); *see also Wicklund v. Page*, Case No. 1:09-cv-00671-EJL-CWD; *Wicklund v. Ada County*, 1:09-cv-00673-CWD; *Wicklund v. State of Idaho*, 1:10-cv-00057-EJL-CWD; and *Wicklund v. Hunstman*, 1:10-cv-00341-WBS, all of which were filed in this Court.

Wicklund's complaint in this case relates to a meeting that occurred among him and the individually named State Defendants which, according to the Complaint, occurred on or about February of 2009. Defendant Melissa Mezo, an employee of Terry Reilly Heath Services and a participant of the SANE Solutions program, produced business records indicating the meeting occurred on January 26, 2009, which fact was not disputed by Wicklund. (Aff. of Mezo ¶ 9, Dkt. 34-3.) Wicklund has affirmed the meeting occurred in January of 2009. (Aff. of Wicklund ¶ 1, Dkt. 35-1.) According to the State Defendants, SANE Solutions notified the Probation and Parole Department that Wicklund was disrupting therapy sessions with his criticisms of the prosecutor's office, polygrapher James Page,

ORDER ON REPORT AND RECOMMENDATION - 4

and the judicial system. (*Id.* ¶¶ 7—8.) A meeting was scheduled, which took place at the Fourth District probation office. (Compl. ¶18 Dtk. 1; Aff. of Bennett ¶5, Dkt. 34-5.) During the meeting, the individuals present allegedly addressed Wicklund's disruptive behavior, and thereafter he did not repeat the disruptive behavior during SANE Solutions therapy sessions. (Aff. of Mezo ¶¶ 9—10.) Wicklund was told to refrain from commenting about his grievances and to participate in group therapy, and informed that failure to satisfactorily complete the program would constitute a probation violation. (Aff. of Bennett ¶ 7, Ex. 6, Dkt. 34-5.) As of May 11, 2011, Wicklund was continuing with his probation and had not been cited for any probation violations after the January 25, 2009 meeting. (*Id.* ¶ 8.)

Wicklund, however, paints a different picture of the meeting, which he claims was "secretive, coercive and threatening." (Compl. ¶17, Dkt. 1.) Wicklund contends that the State Defendants "demanded" he stop his investigation regarding Page, and he was "ordered" not to take legal action against the Ada County Prosecutor's Office or the polygrapher, James Page, otherwise he "would go to jail that day." (Compl. ¶¶ 19-20.) Wicklund also avers he was informed that, if a lawsuit was filed in the future, he "would be jailed pursuant to discretionary time," and was told to "stand down." (Compl. ¶¶ 21-23.)

Wicklund filed a Notice of Tort Claim with the Idaho Secretary of State on August 19, 2009, containing details about the meeting described in his Complaint, although the Notice alleged that the meeting occurred in 2008. (Aff. of Artiach ¶1, Ex. 1, Dkt. 34-4.)

Wicklund filed a three count complaint with the Court on December 22, 2009, against the named Defendants for violation of his constitutional rights under the First, Fifth, and Fourteenth Amendment under 42 U.S.C. § 1983, as well as for negligence and intentional infliction of emotional distress. Wicklund contends that the State Defendants' threats violated his First Amendment right to free speech, because the State Defendants threatened to incarcerate him if he spoke of his investigations and

the alleged improper conduct he was investigating. Wicklund seeks "nominal and actual damages" for the constitutional violation.

In addition, Wicklund alleges the State Defendants were negligent because they breached their duty of care by "calling the meeting, intimidating the Plaintiff, threatening to jail [Plaintiff], and depriving him of his liberty when they knew or should have known their conduct was unreasonable." The third count alleges intentional infliction of emotional distress, claiming that the State Defendants' threats and conduct were intentional and that Wicklund suffered "extreme emotional distress" as a result of the State Defendants' conduct. Wicklund seeks damages under the state law claims.

## ANALYSIS

### 1.      Standards for Motions for Summary Judgment

The Court agrees that the correct standard for summary judgment motions was applied by Judge Dale. Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Rule 56 makes it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine."  An issue is "material" if it affects the outcome of the litigation.  An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975) (*quoting* First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)).  The Ninth Circuit cases are in accord.  *See, e.g., British*

*Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

**2.   Objections**

**A. *Reliance on Unverified Complaint***

Defendants allege the magistrate judge erred in relying on allegations in the unverified Complaint to create a genuine issue of material fact preventing summary judgment instead of requiring Plaintiff to come forward with other admissible evidence in the form of an affidavit or declaration.  This Court acknowledges that mere allegations in an unverified complaint cannot be used to create an issue of material fact.  *See McKenzie v. US. Home Corp.*, 704 F.2d 778, 779 (5th Cir. 1983).  The Court is confident that Judge Dale is also well aware of the need to look to "admissible evidence" to determine if a genuine issue of material fact exists when reviewing a motion for summary judgment.  In

ORDER ON REPORT AND RECOMMENDATION - 7

fact, Judge Dale stated such in footnote 4 of the Report and Recommendation: "Wicklund may not rely upon the pleadings and must show by "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists.  *Celotex*, 477 U.S. at 324." The Court will consider the specific evidence relied upon by Judge Dale in ruling on the objections presented.

### B.  Were Defendants Being Sued in Their Individual Capacities

State Defendants object to Judge Dale's finding that the individually named State Defendants were being sued in their individual capacities.  Judge Dale determined that to the extent the individually named state employees were being sued in their "official" capacities such claims were barred as those are essentially claims against State of Idaho and such claims are barred by the Eleventh Amendment to the United States Constitution.  *See Kentucky v. Graham*, 473 U.S. 159 (1985).  Judge Dale then examined the Complaint in detail and determined that based on the nature of the claims, the Plaintiff was also suing the individually named state employees Bennett, Lynch and Sutherland in their "individual" or personal capacities.  It is this second determination State Defendants object to.

State Defendants argue the cases relied upon by Judge Dale were distinguishable as such cases were not motions for summary judgment, but motions to dismiss and therefore the standard applied was more lenient since the courts were limited to only considering the pleadings in a light most favorable to the plaintiffs.  The Court agrees the question presented in *Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1990), *Demery v. Kupperman*, 735 F.2d 1139 (9th Cir. 1984) and *Blaylock v. Schwinden*, 862 F.2d 1352 (9th Cir. 1988) all involved motions to

dismiss.   However, this Court is unpersuaded that the form of the motion controls whether or not Wicklund is pursuing his claims against Bennett, Lynch and Sutherland in both their official and individual capacities.

In this case, Plaintiff named as individual defendants both state probation employees as well as private sector employees who worked for SANE Solutions.  Because Plaintiff's Complaint is different than the complaints in *Price* and *Demery* where the plaintiffs named *only* state actors as Defendants, Defendants argue it is illogical to construe Wicklund's Complaint as bringing a claim against Bennett, Lynch and Sutherland in their individual capacities. Again, the Court is not persuaded by this argument. When considering the Complaint as a whole, the Court finds that it is possible to construe the Complaint as alleging claims against the state employees both in their official and individual capacities. While a better practice may be to specifically list each defendant (in the caption and in the body of the complaint) and state the status in which such defendant is being sued, the Court finds in construing Wicklund's Complaint in this case it is at least plausible that he was stating a claim against Bennett, Lynch and Sutherland in both capacities.

Where an official is sued under § 1983 for damages, the presumption is that the suit is against the state actor in his or her individual capacity. *Shoshone-Bannock Tribes v. Fish and Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994). This is because a claim for damages against state officials is clearly barred by the Eleventh Amendment. *Id.* While it is true in this particular case Wicklund sought to have the Court overturn the immunity provided by the Eleventh Amendment, that does not mean that an alternative claim against the state officials was not also being brought against Bennett, Lynch and Sutherland in their individual capacities. The Court acknowledges the presumption can be rebutted, but the Court finds the Complaint in this case adequately indicates Bennett, Lynch and Sutherland are individuals not just agents of the State of Idaho, IDOC and the Idaho Commission of Pardon and Parole. Further Wicklund seeks money damages against these three individuals for alleged violations of Wicklund's constitutional rights. Because money damages are being sought, Judge Dale was correct in finding the claims are against Bennett, Lynch and Sutherland should be construed as claims against these defendants in their individual capacities.

Finally, the Court finds the State Defendants argument pursuant to the Idaho Tort Claims Act ("ITCA") as unpersuasive as the individual capacity claim is pursuant to 42 U.S.C. § 1983, not the ITCA. Judge Dale recommends dismissing Wicklund's claims under the ITCA based on Plaintiff's failure to give notice of such claims within the requisite 180 day notice period. Therefore, any interpretations concerning the ITCA presumptions are not binding on the determination of whether Plaintiff has alleged a § 1983 claim against state employees in their individual capacities. For all these reasons, the Court denies the objection

that the claims against Bennett, Lynch and Sutherland are only in their official capacities.

### C.    *Qualified Immunity for State Defendants*

#### 1) *Qualified Immunity Standard*

Having determined Wicklund's Complaint presents a claim against Bennett, Lynch and Sutherland in their individual capacities, the next objection the Court must address is the State Defendants objection concerning the applicability of qualified immunity as a defense for the alleged First Amendment violations.  State Defendants argue Judge Dale discussed the proper standard for qualified immunity in her Report and Recommendation but failed to apply the doctrine properly to the facts presented.

The standard for qualified immunity was accurately set forth by Judge Dale in pages 9 -12 of the Report and Recommendation and this Court incorporates the same standard:

> When a plaintiff is seeking damages against a state official, the Court generally construes the complaint as an individual capacity suit because an official capacity suit for damages would be barred.  *See Cerrato v. San Francisco Community College Dist*., 26 F.3d 968, 973 n.16 (9th Cir. 1994). The Eleventh Amendment prohibition against monetary damages imposed upon a state and its officials acting in their official capacity does not apply to personal capacity suits seeking to impose personal liability upon government officials for actions taken under color of state law. *Id*. (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  Although the Complaint does not expressly state that Wicklund is suing the individual State Defendants in their individual capacities, the basis of the claims asserted and the nature of the relief sought—monetary damages—can reasonably be construed as asserting claims against the individual State Defendants in their individual capacities. *See Price v. Akaka*, 928 F.2d 824, 828 (9th Cir.

1990) (construing a complaint to assert claims against state officials in their individual capacities based upon the claims asserted and the nature of the relief sought).

In Section 1983 actions, the doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate an inmate's clearly-established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Conversely, a state official may be held personally liable in a Section 1983 action if he knew or should have known that he was violating a plaintiff's clearly-established federal rights. *Id.* True to its dual purposes of protecting state actors who act in good faith and redressing clear wrongs caused by state actors, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

The Court generally applies a two pronged test to resolve qualified immunity claims. First, the Court considers whether, "[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the [defendants'] conduct violated a constitutional right," and second, whether that right was clearly established. *Saucier v. Katz*, 533 U.S. at 201 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). The Court must consider the materials submitted in support of, and in opposition to, summary judgment, and view all facts in favor of the party opposing summary judgment. *Squaw Valley* Development Co v. Goldberg, 375 F.3d 936, 942 (9th Cir. 2004), *rev'd on other grounds* (citing *Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001)). If no constitutional violation is found, the inquiry ends at step one. *Id.* (citing *Cunningham v. City of Wenatchee*, 345 F.2d 802, 810 (9th Cir. 2003)). If the parties' submissions create a triable issue of material fact as to whether a constitutional violation has occurred, the Court proceeds to step two. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be

addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

To determine whether a right was clearly established, a court turns to Supreme Court and Ninth Circuit law existing at the time of the alleged act. *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996) (citation omitted). In the absence of binding precedent, the district courts should look to available decisions of other circuits and district courts to ascertain whether the law is clearly established. *Id.* (citation omitted).

The inquiry of whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. at 201. For the law to be clearly established, "[t]he contours of the right" must be sufficiently clear that a reasonable official would understand that his conduct violates that right. *Anderson v. Creighton,* 483 U.S. 635 (1987). It is not necessary that the "very action in question has previously been held unlawful, . . . but it is to say that in the light of preexisting law the unlawfulness must be apparent" to the official. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. at 194-95 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). Application of qualified immunity is appropriate where "the law did not put the [defendant] on notice that his conduct would be clearly unlawful. *Id.*, 533 U.S. at 195.

However, if there is a genuine dispute as to the "facts and circumstances within an officer's knowledge," or "what the officer and claimant did or failed to do," summary judgment is inappropriate. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir.1993). When a Section 1983 defendant makes a properly supported motion for summary judgment based on immunity, the plaintiff has the obligation to produce evidence of his own; the district court cannot simply assume the truth of the challenged factual allegations in the complaint. *Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).

## *2) Scope of the Alleged Violation of First Amendment Rights*

State Defendants argue that the Report and Recommendation fails to address each prong of the qualified immunity analysis.  State Defendants argue that first the Court must determine whether Wicklund's disruptive comments during his court ordered therapy sessions constituted protected speech under the First Amendment.

State Defendants want to limit scope of the alleged constitutional violation to the probation officers' undisputed order to Wicklund to stop his disruptive complaints about the polygrapher and prosecutor *during his court ordered therapy  sessions*.   The Court finds this is too restrictive of a view of the First Amendment claim presented.  The Court finds that the alleged First Amendment  violation is Wicklund's assertion that Bennett, Lynch and Sutherland threatened that if he continued to pursue his complaints against the polygrapher and prosecutor, he would be put in jail for a probation violation. The Court understands that the State Defendants maintain that the discussion at the meeting was limited to the disruptive behavior during the therapy sessions and that no threat of jail time was made concerning Wicklund's pursuit of complaints and potential lawsuits outside the therapy sessions.  However, the affidavit of Wicklund creates a genuine issue of material fact regarding what was stated at the meeting on  January 26, 2009.

Judge Dale specifically cited and quoted from Wicklund's affidavit (not the allegations in the Complaint) in finding a genuine issue of fact existed regarding the First Amendment claim on pages 14 and 15 of the Report and Recommendation:

> In his affidavit, Wicklund states that, during the meeting, Defendant Bennett, the Director of Probation and Parole, held up a "handful of papers" constituting the letters Wicklund had sent to the probation department, governor's office, and attorney general's office complaining about polygrapher James Page, SANE Solutions, and the IDOC. Allegedly, Defendant Bennett told Wicklund that if he did "not 'stand down' with regards to the matter and [Wicklund's] complaint involving him," Defendant Bennett would jail Wicklund. Bennett also allegedly told Wicklund that, "depending on how I handled things, he would determine whether to put me in jail and asked me what I had to say for myself." Bennett allegedly asked Wicklund what he had to say for himself regarding this "bull*** and lawsuits and all your investigations." Defendant Lynch allegedly stated to Wicklund that his life would be "a lot simpler if [he] would get away from all this 'nonsense.'"

This Court finds Wicklund's affidavit clearly establishes Wicklund's personal knowledge of the scope of the meeting and his recollection of what was said by Bennett and Lynch. While the State Defendants have provided affidavits from other attendees of the meeting who have a significantly different recollection of what Wicklund was told, the Court cannot resolve the disputed facts at this stage in the litigation. Instead, the Court must view the facts in a light most favorable to Wicklund, which means assuming as true Wicklund's description in his affidavit of what was said by Bennett and Lynch.

For purposes of analyzing the motion for summary judgment, this Court cannot ignore that Wicklund has provided some admissible evidence that a party opponent ("Bennett) said if he  did not "stand down" with regards to his complaints about the

ORDER ON REPORT AND RECOMMENDATION - 15

polygrapher, prosecutor and probation department, he would be put in jail.  (Aff. of Wicklund, Dkt. 35-1, ¶ 12.)  It is this alleged threat of imprisonment if Wicklund did not drop his complaints, letter writing, and pursuit of potential civil rights lawsuits against the polygrapher and prosecutor *outside of the therapy sessions* that constitutes the alleged First Amendment violation.  (Aff. of Wicklund, Dkt. 35-1, ¶ 28.)

It is undisputed the State Defendants restricted Wicklund's speech during the therapy sessions.  State Defendants contend they did so because he would be in violation of the terms of his probation for failure to complete the court ordered sessions if he was removed from participating in the sessions due to his disruptive behavior. The State Defendants argue that they had a legitimate correctional goal in preventing Wicklund from disrupting the therapy sessions.  The Court agrees.

To the extent the State Defendants' objection is that summary judgment should be granted as to a First Amendment right regarding speech during the therapy sessions, the Court will clarify that it concurs with State Defendants' argument that the probation officers' order during the meeting or at any other time prohibiting Wicklund from complaining about the polygrapher, prosecutor or prosecuting attorney's office during court ordered therapy session was not a violation of Wicklund's First Amendment rights. Wicklund's speech *during the therapy sessions* is not protected speech under the First Amendment.  *See United States v. Turner*, 44 F.3d 900, 903 (10th Cir. 1995). "[P]robationers, like parolees and prisoners, properly are subject to limitations from which ordinary persons are free."  *United States v. Bee*, 162 F.3d 1232, 1234 (9th Cir. 1998).  In this case, it is undisputed by Wicklund's comments about the polygrapher and

prosecutor were not related to the purpose of the court ordered therapy and were in fact disruptive to the group therapy sessions.

To the extent that Plaintiff is seeking damages related to the actions of Bennett, Lynch and Sutherland to limit Wicklund's disruptive behavior *during the therapy sessions*, the Court finds that summary judgment is appropriate as there are no genuine issues of material fact and as a matter of law Wicklund's speech *during the therapy sessions* is not protected by the First Amendment.  Therefore, no constitutional violation has been shown and the Court need not continue its qualified immunity analysis on the undisputed restrictions on Wicklund's speech during Wicklund's court ordered therapy sessions.

### 3) *First Amendment Retaliation Claim Concerning the Remaining Individually Named State Defendants and Qualified Immunity*

As to the disputed First Amendment claim related to the alleged threat of imprisonment to curtail Wicklund's First Amendment rights to file complaints and civil lawsuits about the polygrapher and prosecutor's office, the Court must determine if the motion for summary judgment should be granted on this claim.  The Court agrees with Judge Dale that for purposes of the motion for summary judgment, the disputed threat of imprisonment for failing to cease activities outside the therapy sessions, but while on probation, states a First Amendment claim.

### a) *Defendants Lynch and Sutherland*

As discussed earlier, Bennett is the Director of Probation and Parole for the Fourth

Judicial District, Lynch is a Supervisor of Probation and Parole in the Fourth Judicial

District and Sutherland is Wicklund's Probation Officer in the Fourth Judicial District.

The January 26, 2009 meeting took place at the Probation Office for the Fourth Judicial

District.

In Wicklund's affidavit he indicates that Bennett is the person who allegedly

threatened imprisonment if he did not cease his complaints, letter writing and potential

lawsuits.  (Aff. of Wicklund, Dkt. 35-1.) Wicklund states Sutherland and Lynch were

also at the January meeting as were representatives of SANE Solutions (Mark

McCullough, Melissa Mezo and Heidi Hart).  Wicklund does not indicate in his affidavit

or in any other evidence submitted that Sutherland or Lynch made any threats of

retaliation during the meeting.  Wicklund  states in his affidavit that Lynch told him he

needed to go to the other aftercare group therapy meeting and that he understood that

requirement.  (Aff. of Wicklund, Dkt. 35-1, ¶ 25.)  Wicklund also states Lynch told him

is life would be simpler if her would get away from all this "nonsense." *(Aff. of*

Wicklund, Dkt. 35-1, ¶ 26.)  Even construing these facts in a light most favorable to

Plaintiff, the mere attendance at the meeting by Lynch and Sutherland as well as the

limited statements by Lynch to Wicklund after the meeting do not rise to the level of

establishing a claim for a First Amendment retaliation against these defendants for

violations of Wicklund's civil rights under § 1983. Simply put, Lynch's recommending

Wicklund stop this "nonsense" does not equate to a threat of imprisonment or retaliation.

Wicklund has only provided admissible evidence that the  alleged threatening statements

were made by Bennett, the Director of Probation and Parole for the Fourth Judicial

District.  The actions and statements of Bennett cannot be used to create individual

liability against Lynch and Sutherland where Plaintiff has provided no evidence of any

separate threats of retaliation by these two individuals.  Therefore, the Court finds no

reasonable jury could find that Lynch and Sutherland's attendance and minimal

participation at the January 2009 meeting rises to the level of a constitutional violation.

Having found the actions of Lynch and  Sutherland did not violate Wicklund's

civil rights, the Court need not continue with the qualified immunity analysis.  State

Defendants Lynch and Sutherland should have their motion for summary judgment

granted in their favor on the Plaintiff's First Amendment claim by these defendants in

their individual capacities.

### b) Defendant Bennett

As to Defendant Bennett, the Court finds Plaintiff has established a genuine issue

of material fact exists regarding what was actually said at the January 26, 2009 meeting.

The Court finds Wicklund's complaints, letter writing and filing of civil lawsuits is

protected speech under the First Amendment. *Rizzo v. Dawson, 778 F.2d 527 (9th Cir.*

*1985); Rhodes v. Robinson,* 408 F.3d 559 (9th Cir. 2005).[1] State actors cannot limit a

probationer's right to file civil lawsuits if the probationer believes his civil rights have

---

[1]Although Wicklund was not incarcerated, the parties have not pointed the Court to any
other authority indicating the elements of a First Amendment claim are substantially
different for persons subject to probationary restrictions. Wicklund relied upon *Rhodes* in
his memorandum. (Mem. at 7 Dkt. 35.)

been violated by the polygrapher and/or the prosecutor's office.

State Defendants do not object that the law related to a First Amendment retaliation claim was "clearly established" in January of 2009. "[T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes. That retaliatory actions by prison officials are cognizable under § 1983 has also been widely accepted in other circuits." *Pratt v. Rowland*, 65 F.3d 802, 806 & n. 4 (9th Cir. 1995). Therefore, the Court must next determine in its qualified immunity analysis if, in viewing the facts in a light most favorable to Plaintiff, Plaintiff has as a matter of law established the facts necessary to support a constitutional violation for retaliation.

The elements for a retaliation claim are: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). The State Defendants argue there was no evidence Wicklund's First Amendment rights were "chilled" since he filed numerous civil lawsuits.

Wicklund believes that January 26, 2009 meeting that is the subject of his Complaint "was a clear attempt to force me to drop my complaints and potential lawsuits that [he] was investigating," and was "about more than my commenting during group sessions," because the State Defendants made it clear that he "would be jailed if [he]

pursued the matter any further."  (Aff. of Wicklund, Dkt. 35-1, ¶¶ 28-30.)  Wicklund's affidavit establishes the first three elements that an adverse action was taken by state actors against him involving his protected First Amendment conduct.

As to the fourth element, whether the facts establish Wicklund's exercise of his First Amendment rights were "chilled," this is a close call for the Court.  Judge Dale correctly pointed out that a plaintiff must allege either a "chilling effect" or that he suffered some other harm.  *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing *Rhodes*, 408 F.3d at 568 n.11).  Wicklund has provided no evidence that he suffered some "other harm" as a result of the meeting.  Therefore, he must establish that the alleged threat of imprisonment "chilled" the exercise of his First Amendment rights.

In this case, the record establishes Wicklund stopped his disruptive comments related to his complaints about the polygrapher and prosecutor during his therapy sessions, Wicklund was never cited with a probation violation due to his continuing complaints, letter writing and pursuit of civil rights lawsuits, and Wicklund was never imprisoned for his First Amendment actions during or outside his therapy sessions. Moreover, after the January 26, 2009 meeting, Wicklund filed numerous civil lawsuits discussed in the Factual Background section of this Order against the polygrapher James Page, Ada County, the State of Idaho, and the Idaho Sexual Offender Classification Board.  These civil filings seem to provide irrefutable evidence that Wicklund's exercise of his First Amendment rights was not in any way "chilled" even though Wicklund claims he was "stunned" after the meeting.  (Aff. of Wicklund, Dkt. 35-1, ¶ 27.)

ORDER ON REPORT AND RECOMMENDATION - 21

However, in *Brodheim v. Cry*, 584 F.3d 1262, 1271(9th Cir. 2009), the Ninth

Circuit held that the test is not whether the plaintiff's rights were actually chilled.

> The district court examined several occasions on which Brodheim claims his exercise of the right to file grievances was "chilled," as well as the number of grievances that Brodheim filed after the incident, and concluded that Brodheim failed to produce sufficient evidence of such chilling.  However, this focus on whether or not the record showed Cry was actually chilled was incorrect. In *Rhodes*, we explicitly held that an objective standard governs the chilling inquiry; a plaintiff does not have to show that "his speech was actually inhibited or suppressed," but rather that the adverse action would chill *or* silence a person of ordinary firmness from future First Amendment activities." 408 F.3d at 568-69, *quoting Mendocino Enviro. Center v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (emphasis in original).  To hold otherwise "would be unjust" as it would "allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity." *Id.* at 569.

So the question becomes has Wicklund shown that Bennett's alleged threat of

imprisonment for complaining and pursuing civil lawsuits outside of the therapy

sessions would have chilled or silenced a person of ordinary firmness from exercising

his First Amendment rights?  This Court cannot say as a matter of law based on the

record before it that Wicklund has failed to meet this objective standard.  This is a

determination the finders of fact will have to make after weighing the credibility of all

the witnesses at trial.

As to the fifth element, State Defendants have not argued that limiting Wicklund's speech outside of his therapy sessions was to advance a legitimate correctional goal.  This is because State Defendants maintain the alleged threat of jail time for activities outside of the therapy sessions was never made and presumably because the case law supports that limiting a probationer's First Amendment speech and access to the courts does not advance a legitimate correctional goal.

In summary, the Court finds the Plaintiff's First Amendment claim against Bennett survives summary judgment.  Wicklund has a protected First Amendment right to complain and access the courts in connection with his civil rights claims.  It will be up to a jury to weigh the testimony and credibility of the witnesses and determine: (1) if Bennett made the alleged threats of imprisonment if Wicklund exercised his First Amendment rights outside of the court ordered therapy sessions; (2) if the statements the jury determines were made during the January 26, 2009 meeting would have chilled or silenced a person of ordinary firmness from exercising his First Amendment rights; and (3) what damages, if any, should be awarded if Plaintiff is successful in proving a First Amendment retaliation claim.

## ORDER

**IT IS HEREBY ORDERED:**

1)  Defendants' Motion for Summary Judgment (Dkt. 34) is

**GRANTED IN PART AND DENIED IN PART.**  All claims against State

Defendants are dismissed except for the First Amendment claim as discussed

in this Order against Defendant Bennett.

DATED:  **March 16, 2012**

Honorable Edward J. Lodge
U. S. District Judge